# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| BRITTANY CROSBY, § <br> § <br> *Plaintiff,* § <br> v. § <br> § <br> COMPASS GROUP USA, INC., § <br> § <br> *Defendant.* § | Civil Action No. 4:24-cv-777 <br> Judge Mazzant |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant's Motion to Compel Arbitration and Stay Litigation (Dkt. #9). Having considered the Motion and the relevant pleadings, the Court finds that the Motion should be **DENIED without prejudice**.

## BACKGROUND

This is a racial discrimination and retaliation case. Plaintiff Brittany Crosby ("Crosby") worked as a Shift Supervisor for Defendant Compass Group USA, Inc. ("Compass") (Dkt. #1). Compass operates dining establishments, including the facilities at the University of Texas at Dallas (Dkt. #1 at ¶¶ 3, 14). Crosby began working for Compass around 2019 in a temporary capacity but was eventually offered a full-time position as a sous chef (Dkt. #1 at ¶ 14). She accepted the position and began working as a full-time employee in February 2020 (Dkt. #1 at ¶ 14). Crosby states that during her time as a sous chef, other Compass employees used racial slurs when speaking to her and that Compass discriminated against her by refusing to promote her because she is African American (Dkt. #1 at ¶¶ 14–30). Further, Crosby alleges that Compass terminated her as retaliation for complaining about racial discrimination during her employment (Dkt. #1 at ¶ 37). After her termination, Crosby filed a charge of discrimination with the Equal Employment Opportunity

Commission ("EEOC") and the Texas Workforce Commission alleging race discrimination and retaliation (Dkt. #1 at ¶ 35). On June 7, 2024, Crosby Received a Notice of Right to Sue from the EEOC (Dkt. #1 at ¶ 35). Accordingly, on August 27, 2024, Crosby filed this lawsuit (Dkt. #1) and Compass filed their Answer on October 3, 2024 (Dkt. #5).

On December 9, 2024, Compass filed this Motion, urging the Court to send the case to arbitration (*See* Dkt. #9). Through it, Compass argues that Crosby completed onboarding paperwork when she became a full-time employee in February 2020. To complete the process, security procedures required Crosby to create unique credentials and a password before she could review documents and insert her electronic signature (Dkt. #9 at p. 4). According to Compass, at this time, Crosby signed a mutual arbitration agreement ("Agreement") which required her to arbitrate all disputes that arise out her employment with Compass (Dkt. #9 at p. 2). Crosby disagrees. She avers that when she accepted the position, Compass asked her to meet with Yoonki Na ("Na"), an HR Representative (Dkt. #11 at p. 2). Crosby states that Na brought a laptop computer to assist Crosby with onboarding (Dkt. #11 at p. 2). At some point, Na turned the laptop towards Crosby and had her input the following: (1) email address; (2) password; (3) birthdate; and (4) social security number (Dkt. #11-1 at p. 1). Once Crosby input this information, Na then turned the laptop back to himself and began asking her questions (Dkt. #11 at p. 2). As Na asked Crosby questions, Na input Crosby's responses into the laptop (Dkt. #11 at p. 2). Crosby states that she does not recall Na asking whether she accepted the terms of the Agreement (Dkt. #11 at p. 2). Further, Crosby states she does not recall receiving any PDF attachments of the documents that she allegedly reviewed and signed during the onboarding process (Dkt. #11 at p. 2; Dkt. #11-1 at ¶

2

5). Accordingly, Crosby urges the Court to deny the Motion or, alternatively, order further discovery on whether the Agreement is valid (Dkt. #11 at p. 5).

## LEGAL STANDARD

### I. The Federal Arbitration Act

Under the Federal Arbitration Act ("FAA"), parties to a contract may agree that an arbitrator rather than a court will resolve disputes arising out of the contract. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 527 (2019). The FAA provides that written agreements to arbitrate controversies arising out of an existing contract "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "The FAA was designed to overrule the judiciary's long-standing refusal to enforce agreements to arbitrate and to place such agreements upon the same footing as other contracts." *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989) (cleaned up). The FAA establishes "a liberal federal policy favoring arbitration agreements" and "requires courts to enforce agreements to arbitrate according to their terms." *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 97 (2012).

Although there is a strong federal policy favoring arbitration, it "does not apply to the determination of whether there is a valid agreement to arbitrate between the parties." *Lloyd's Syndicate 457 v. FloaTEC, L.L.C.*, 921 F.3d 508, 516 n.5 (5th Cir. 2019) (quoting *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003)). The FAA "does not require parties to arbitrate when they have not agreed to do so." *Volt*, 489 U.S. at 478. Rather, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of Am. V. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582

3

(1960). The FAA "simply requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms." *Volt*, 489 U.S. at 478.

When considering a motion to compel arbitration, courts apply a two-step framework. First, the Court must determine "whether the parties entered into any arbitration agreement at all." *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016). "This first step is a question of contract formation only—did the parties form a valid agreement to arbitrate some set of claims." *IQ Prods. Co. v. WD-40 Co.*, 871 F.3d 344, 348 (5th Cir. 2017), *cert. denied*, 138 S. Ct. 2620 (2018). To determine whether there is a valid agreement to arbitrate, courts "apply ordinary state-law principles that govern the formation of contracts." *Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir. 1996). If the Court finds that there is a valid agreement to arbitrate, it proceeds to the second question: whether the claim at issue is covered by the arbitration agreement. *IQ Prods.*, 871 F.3d at 348. In the second step, the Court must determine "whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims." *Webb*, 89 F.3d at 258 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985)). This second question usually is for the Court, unless the arbitration clause contains a valid delegation clause for an arbitrator to determine whether the claim falls within the arbitration agreement. *Kubala*, 830 F.3d at 202.

The party seeking to compel arbitration must prove the existence of an agreement to arbitrate by a preponderance of the evidence. *Grant v. Houser*, 469 F. App'x 310, 315 (5th Cir. 2012). Once the Court determines that there is a valid agreement to arbitrate, the strong federal policy favoring the enforcement of the arbitration agreements applies, and all ambiguities must be resolved in favor of arbitration. *Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 429 (5th Cir. 2004).

As the Supreme Court has stated: "An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986).

## II.    Motion to Compel Arbitration

"While [this] two-step inquiry used to consider a motion to compel arbitration under the FAA is well-settled, the [Fifth] Circuit has never discussed the appropriate standard for a district court to apply when considering a motion to stay or compel arbitration." *Jackson v. Royal Caribbean Cruises, Ltd.*, 389 F. Supp. 3d 431, 443 (N.D. Tex. 2019). However, courts in other circuits apply a summary judgment-like standard. *See Bazemore v. Jefferson Cap. Sys., LLC*, 827 F.3d 1325, 1333 (11th Cir. 2016); *see also Camara v. Mastro's Restaurants, LLC*, 952 F.3d 372, 373 (D.C. Cir. 2020); *Jackson*, 389 F. Supp. 3d at 443.

Under this well-settled standard, summary judgment is proper if "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The substantive law identifies which facts are material. *Anderson*, 477 U.S. at 248.

The movant has the burden to show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Id.* at 247.  Therefore, the movant must come forward with evidence that establishes "beyond peradventure all of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986).  Once the movant has carried its burden, the nonmovant must "respond to the motion for summary judgment by setting forth particular facts indicating there is a genuine issue for trial." *Byers*, 209 F.3d at 424 (citing *Anderson*,

5

477 U.S. at 248–49). The nonmovant must adduce affirmative evidence. *Anderson*, 477 U.S. at 257. Though the trial court must resolve all reasonable doubts in favor of the nonmovant, *Casey Enterprises, Inc. v. American Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981), the nonmovant will not satisfy its burden with conclusory allegations or unsubstantiated assertions. *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992).

Under this summary judgment-like framework, a party moving to compel arbitration must "present evidence sufficient to demonstrate an enforceable agreement to arbitrate." *Jackson*, 389 F. Supp. 3d at 443 (citations omitted). The burden then shifts to the nonmovant to raise a genuine issue of material fact as to the existence or validity of an agreement to arbitrate. *Id.* To put an arbitration agreement's "existence in issue for FAA purposes, [the nonmovant] must make at least some showing that under prevailing law, they would be relieved of their contractual obligations to arbitrate if their allegations proved to be true and produce some evidence to substantiate their factual allegations." *Butler v. Z&H Foods, Inc.*, No. 21-20086, 2021 WL 4073110, at *1 (5th Cir. Sept. 7, 2021) (citation modified). However, "without corroborating evidence, self-serving affidavits will not suffice to entitle the [nonmovant] to a jury trial." *Id.*

## ANALYSIS

### I. The Electronic Signature and Validity of the Agreement

Compass presents evidence establishing the existence of an enforceable arbitration agreement. A party moving to compel arbitration must "present evidence sufficient to demonstrate an enforceable agreement to arbitrate." *Jackson*, 389 F. Supp. 3d at 443 (citations omitted). "When deciding whether the parties agreed to arbitrate a certain matter [] courts generally [] should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Under Texas law, a binding contract requires: "(1) an offer; (2)

6

an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with intent that it be mutual and binding." *In re Capco Energy, Inc.*, 669 F.3d 274, 279–80 (5th Cir. 2012). Here, the parties dispute Crosby's acceptance of the Agreement because they disagree on whether she signed it. So, the Court must first determine whether Compass can show that the signature is attributable to Crosby. The Texas Legislature has codified that an electronic signature is as valid as a written signature executing an agreement. TEX. BUS. & COM. CODE ANN. § 322.007. An electronic signature is defined as any "electronic sound, symbol, or process attached to or logically associated with a record and executed or adopted by a person with the intent to sign the record." TEX. BUS. & COM. CODE ANN. § 322.002(8). And Texas law provides that an "electronic signature is attributable to a person if it was the act of the person," which "'may be shown in any manner, including a showing of the efficacy of any security procedure applied to determine the person to which the electronic record or electronic signature was attributable." *Aerotek, Inc. v. Boyd*, 624 S.W.3d 199, 205 (Tex. 2021) (quoting TEX. BUS. & COM. CODE ANN. § 322.009(a)). In *Aerotek*, the Texas Supreme Court provided additional clarity on electronic transaction security procedures sufficient to establish that an electronic signature is valid. *Id.* The *Aerotek* Court explained that

> security procedures may include requiring personal identifying information—such as a social security number or an address—to register for an account; assigning a unique identifier to a user and then tying that identifier to the user's actions; maintaining a single, secure system for tracking user activities that prevents unauthorized access to electronic records; business rules that require users to complete all steps in a program before moving on or completing it; and timestamps showing when users completed certain actions.

*Id.* at 205–06.

Here, Compass's security procedures required Crosby to create unique credentials to register a "PeopleHub" account,[1] review documents, and insert her electronic signature (Dkt. #9 at pp. 4–5; Dkt. #9-1 at pp. 2–5). Compass states that once Crosby inserted her electronic signature on the documents, the hiring manager signed them (*See* Dkt. #9-1 at p. 5). Then, these documents were archived in a secure database on PeopleHub (Dkt. #9-1 at pp. 5, 11–32). These processes are sufficient to show that the electronic signature is attributable to Crosby. *See Aerotek, Inc.*, 624 S.W.3d at 205–06; *cf. H-E-B, LP v. Saenz*, No. 01-20-00850-CV, 2021 WL 4733460, at *6 (Tex. App.—Houston [1st Dist.] Oct. 12, 2021, pet. denied) (electronic signature was attributable to employee where employee's assigned unique identification number and password were required to access forms, forms could only be accessed by link sent via email, and signed forms showed employee's unique identification number). Since Compass presented sufficient evidence to demonstrate the existence of an enforceable arbitration agreement, the burden now shifts to Crosby to raise a genuine issue of material fact as to the validity of the Agreement. *Butler*, 2021 WL 4073110, at *1.

Crosby carries her burden by raising a genuine issue of material as to the validity of the Agreement. To raise a genuine issue, the party seeking to avoid arbitration "must make at least some showing that under prevailing law, he would be relieved of his contractual obligation to arbitrate if his allegations proved to be true and he must produce at least some evidence to substantiate his factual allegations." *Paradies Shops, L.L.C. v. Bros. Petroleum, L.L.C.*, No. 21-30225, 2022 WL 3134224, at *2 (5th Cir. Aug. 5, 2022) (citations omitted). Crosby submits her declaration

---

[1] PeopleHub "is a password protected online portal for applicants and employees to apply for positions, and complete, acknowledge, and review employment policies, records, and forms during the onboarding process . . . ." (Dkt. #9-1 at p. 2).

and states that Na turned his laptop towards her, had her input the following: (1) email address; (2) password; (3) birthdate; and (4) social security number (Dkt. #11-1 at p. 1). Crosby also states that "Na was the person who reviewed documents in the onboarding process and clicked through any acknowledgement that documents were received, not me" (Dkt. #11-1 at p. 1). As such, Crosby alleges a plausible way in which her electronic signature could have been forged—that Na signed the Agreement, without Crosby's authorization, when Crosby input her information into Na's laptop (Dkt. #11-1 at p. 2). The Fifth Circuit has held that an affidavit denying the formation of an arbitration agreement raises a genuine issue of material fact. *See Allen v. Vaksman L. Offs., P.C.*, 822 F. App'x 315, 316 (5th Cir. 2020) ("[Plaintiff] has raised an issue of fact, albeit slim, by unequivocally denying, in his (self-serving) affidavit, the formation of an arbitration agreement."). If Crosby's allegations are true, she would be relieved of her obligations under the Agreement because she never accepted it. *Paradies Shops, L.L.C.*, 2022 WL 3134224, at *2. Accordingly, the Court finds that Crosby has raised a genuine issue of material fact as to the validity of the Agreement.

## II.     Arbitral Discovery

Arbitral discovery is warranted. The FAA requires "an expeditious and summary hearing, with only restricted inquiry into factual issues." *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 22 (1983). Therefore, "courts have generally denied arbitration-related discovery absent a compelling showing that such discovery is required." *Hudson v. Windows USA, LLC*, No. 3:16CV596-DPJ-FKB, 2016 WL 8135875 (S.D. Miss. Nov. 3, 2016) (citing *Bell v. Koch Foods of Miss., LLC*, No. 3:08cv697-WHB-LRA, 2009 WL 1259054, at *3 (S.D. Miss. May 5, 2009), *aff'd*, 358 Fed. Appx. 498 (5th Cir. 2009). Here, Crosby has raised a genuine issue of material fact as to whether she signed the Agreement. Indeed, she has declared a plausible way in which the electronic

9

signature could have been forged—that Na signed the Agreement without Crosby's acceptance of the terms. Additional discovery is needed for a thorough evidentiary record so the Court can determine whether to compel arbitration or not. Therefore, Crosby's request for arbitral discovery should be **GRANTED**.

## CONCLUSION

It is therefore **ORDERED** that Defendant's Motion to Compel Arbitration and Stay Litigation (Dkt. #9) is hereby **DENIED without prejudice**.

It is further **ORDERED** that the parties must conduct limited discovery on whether the Agreement is valid. All discovery must be completed on or before September 1, 2025.

**IT IS SO ORDERED.**
SIGNED this 3rd day of July, 2025.

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE